UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

CIVIL ACTION NO. 3:07-CV-91-H

CONTAINERPORT GROUP, INC.                                                  PLAINTIFF

V.

UNITED TRANSPORT TANKCONTAINERS, INC.                  DEFENDANT/
                                                                                            THIRD-PARTY PLAINTIFF

V.

FORT VALE ENGINEERING LTD.

and

CAMP TAYLOR FIRE DEPARTMENT                       THIRD-PARTY DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

      This matter is before the Court on the motion of Third Party Defendant, Camp Taylor Fire Protection District ("Camp Taylor"), to dismiss the Third-Party complaint against it on the grounds of sovereign immunity. The question presented is whether Camp Taylor, an entity created under state statute and certainly performing a public function, is entitled to any kind of immunity from a civil lawsuit. Only recently has the Kentucky Supreme Court sought to clarify and specifically categorize the various sources of immunity available under Kentucky law. *See Yanero v. Davis*, 65 S.W.3d 510 (Ky. 2001); *Ky. Ctr. For the Arts Corp. v. Berns*, 801 S.W.2d 327 (Ky. 1991).

      This case arises out of a hazardous material spill on October 24, 2004. Plaintiff Containerport Group, Inc. ("Containerport") brought suit against United Transport Tankcontainers B.V. ("UTT") alleging that UTT's failure to conform to applicable regulations

caused the discharge of thioglycol.

Camp Taylor operates a volunteer fire district serving a section of Jefferson County off Poplar Level Road.  The district is actually organized under state statutes which authorize the formation of municipal taxing districts and corporations.  Though the district has a separate corporate status it operates under the umbrella of the Louisville/Jefferson County Metro Fire Department.

UTT impleaded Camp Taylor alleging that in responding to the release of thioglycol, a Camp Taylor fireman negligently opened the internal valve of the tankcontainer causing a further release of thioglycol.  UTT seeks contribution from Camp Taylor and a jury instruction to apportion damages in an amount equal to Camp Taylor's proportionate share of the liability and alleged damages.  Camp Taylor's motion seeks immunity from liability and suit.

I.

Camp Taylor has moved to dismiss this action under Rule 12(b)(6).  A motion to dismiss pursuant to Rule 12(b)(6) requires this Court to construe the complaint in the light most favorable to the third-party plaintiff, *Bloch v. Ribar,* 156 F.3d 673, 677 (6th Cir. 1998); accept all the complaint's factual allegations as true, *id.*; and determine whether "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  The Court may not grant such a motion to dismiss based on disbelief of a complaint's factual allegations.  *Miller v. Currie,* 50 F.3d 373, 377 (6th Cir. 1995).  Rather, the Court must liberally construe the complaint in favor of the party opposing the motion and may dismiss the case only where no set of facts could be proved consistent with the allegations which would entitle the third-party plaintiff to a recovery. *Hishon*

*v. King & Spalding,* 467 U.S. 69, 73 (1984); *Miller*, 50 F.3d at 377.

To determine whether Camp Taylor is entitled to immunity from tort liability, this Court must apply Kentucky law. *Erie Ry. Co. v. Tompkins*, 304 U.S. 64 (1938). In determining Kentucky law, only the decisions of the highest court of Kentucky bind this Court. *See Comm'r v. Estate of Bosch,* 387 U.S. 456, 465 (1967). Ultimately, this Court must predict how Kentucky's highest court would rule and may disregard an intermediate state court decision if convinced that the highest court would decide otherwise. *See Meridian Mut. Ins. Co. v. Kellman*, 197 F.3d 1178, 1181 (6th Cir. 1999).

Kentucky courts have not ruled directly on this precise issue. However, those courts have discussed related issues sufficiently that this Court can make a confident prediction.

II.

The concept of sovereign immunity developed under the English common law and was embraced by American courts, including Kentucky's. *See Yanero*, 65 S.W.3d at 517. The doctrine precludes the maintaining of any suit against the state. *Id.* The Kentucky Supreme Court summarized the "historically troublesome" application of the doctrine in this way:

> At the heart of the matter is the tension between our constitutional provisions, Kentucy Constitution §§ 14, 54, and 241, protecting our citizens against legislative action to limit or deny access to the courts . . . and Kentucky Constitution § 231, interpreted through the years to constitutionalize the common law doctrine of sovereign immunity in suits brought against the Commonwealth. Section 231 limits sovereign immunity to "suits . . . against the Commonwealth." The crux of the decisions to date has been that § 231 as a specific provision overrides §§ 14, 54 and 241 as general provisions but *only* in suits which may be legitimately classified as "brought against the Commonwealth." *Berns*, 801 S.W.2d at 328-29.

In recognition of this tension, the Kentucky courts have sought to bound the scope of which suits are properly considered to be "against the Commonwealth." The state's sovereign immunity

extends to its political subdivisions. *See, e.g., Yanero v. Davis*, 65 S.W.3d 510, 526 (Ky. 2001). Louisville/Jefferson County Metro Government ("Louisville Metro") is one of the state's political subdivisions. Ky. Rev. Stat. Ann. 67C.101(2)(e) ("a consolidated local government shall be accorded the same sovereign immunity granted counties, their agencies, officers and employees").

Camp Taylor argues first that it is a "political subdivision of the Commonwealth" and as such enjoys the same sovereign immunity as enjoyed by the state. The Supreme Court of Kentucky discussed the meaning of the term "political subdivision" in the context of sovereign immunity in considering whether a local school board could be so classified. *Yanero v. Davis*, *supra*. The Court explained that counties are "political subdivisions" of the state, a conclusion grounded upon the Kentucky constitution's recognition and authorization of this form of local government. *Id.* at 526 *citing* Ky. Const. §§ 63, 144.

By contrast, a local school board is not constitutionally provided for, and is therefore not a political subdivision. *Id.* at 526-27. Rather, as a creature of the General Assembly, it is an agency of the state through which the state implements its constitutional mandate to provide an "efficient system of common schools." *Id.* at 526 *citing* Ky. Const. § 183. The distinction is important here because a political subdivision enjoys the same absolute sovereign immunity as the Commonwealth while an agency properly classified as a "state agency" is immune from tort liability only when it undertakes a governmental as opposed to a proprietary activity. *Id.* at 527. The *Yanero* court labeled the latter form of immunity "governmental immunity" which distinguishes it from the absolute "sovereign immunity" which is enjoyed only by the Commonwealth and its political subdivisions like counties. *Id.*

Camp Taylor argues that it is a "political subdivision" of the Commonwealth. However, the highest court in Kentucky has classified a fire protection district organized under Ky. Rev. Stat. Ann. § 75 as a "municipal corporation." *Kelly v. Dailey*, 366 S.W.2d 181, 183 (Ky. 1963). Moreover, the language of Ky. Rev. Stat. Ann. § 75 does not support the political subdivision classification. Ky. Rev. Stat. Ann. § 75.010 permits a fiscal court to create a volunteer fire department "in accordance with the procedures of KRS 65.182," which in turn establishes the method for creating a "taxing district." "Taxing district" is defined as "any special district authorized by statute to levy ad valorem taxes . . ." Ky. Rev. Stat. Ann. § 65.180. Nothing in Kentucky law indicates that special districts or taxing districts are necessarily cloaked with the same sovereign immunity afforded to a local government like a county which is authorized and recognized by the constitution. *See, e.g., Lexington-Fayette Urban County Gov't v. Smolcic*, 142 S.W.3d 128, 133-34 (Ky. 2004).

This Court concludes that, unlike a county, a volunteer fire department is not anticipated by the Kentucky Constitution. Rather, a volunteer fire department falls squarely within the definition of "local government" contained in the Kentucky Revised Statutes.[1] Consequently, Camp Taylor is not entitled to sovereign immunity as a political subdivision of the state.

### III.

Over, the years, Kentucky courts seem to have conflated or confused sovereign immunity with related immunity concepts. In *Yanero*, the Supreme Court clarified that sovereign immunity is a narrowly confined immunity. Governmental immunity is a broader concept which

---

[1] For example, the Kentucky Court of Appeals has classified a water district, a "special district" created by a county fiscal court, as a "local government" under the Claims Against Local Government Act, Ky. Rev. Stat. Ann. § 65.200. *Siding Sales, Inc. v. Warren County Water Dist.*, 984 S.W.2d 490 (Ky. App. 1998).

5

arises from the separation of powers doctrine of the Kentucky constitution. It provides immunity to a broader class, those qualifying as governmental agencies in particular circumstances.

A.

In the alternative, Camp Taylor's argues that it is entitled to immunity because it is an "integral part" of Louisville Metro, which has sovereign immunity because it is a political subdivision of the state. Just because a state statute authorizes or creates an agency, however, does not entitle it to claim governmental immunity. *Kentucky Center for the Arts Corp. v. Berns*, 801 S.W.2d 327 (Ky. 1991):

> "[E]ntities entitled to claim inclusion in the Commonwealth's sovereign immunity[2] is not a line which the General Assembly may draw in its discretion, but a problem of constitutional law which . . . must be addressed on a case by case basis. Where sovereign immunity exists by reason of the constitution, the General Assembly may extend or limit waiver as it sees fit, but where no constitutionally protected sovereign immunity exists the General Assembly cannot by statute create it." *Id.* at 329.

The Court limits "constitutionally protected sovereign immunity" to entities "carrying out a function integral to state government" which *Berns* described as "activities commonly understood as performed by central state government at the time the Constitution was enacted." *Id.* at 330-32. Thus, governmental immunity includes only "departments, boards or agencies that are such integral parts of state government as to come within regular patterns of administrative organization and structure." *Id.* at 332 quoting *Kentucky Region Eight v. Commonwealth*, 507 S.W.2d 489, 491 (Ky. 1974). In *Berns,* the Kentucky Supreme Court recognized a two-pronged test for separating "integral parts" of state government from the

---

[2]The *Berns* court's analysis of "sovereign immunity" would be labeled "governmental immunity" under the terminology the Kentucky Supreme Court used later in *Yanero* to describe the immunity for state agencies.

myriad of other statutorily- created agencies performing quasi-public functions. An "integral" entity is "under the direction and control of the central State government *and* [is] supported by monies which are disbursed by authority of the Commissioner of Finance out of the State treasury." *Id.* at 331 *quoting Gnau v. Louisville & Jefferson County Metro. Sewer Dist.*, 346 S.W.2d 754, 755 (1961). Satisfaction of both prongs of the *Berns* test (direction/control and state-funding) distinguishes an entity that is actually an "integral part" of the Commonwealth's government, entitled to invoke its immunity from a state-created entity that is merely performing an arguably quasi-governmental function.[3]

The origin of the *Berns* two-pronged test is tied closely to the scope of jurisdiction of the Kentucky Board of Claims, the forum created by the Kentucky General Assembly to adjudicate "negligence on the part of the Commonwealth [and] any of its departments or agencies." Ky. Rev. Stat. Ann. § 44.070. *Berns* recognized the Commonwealth's immunity from suit in a court of law as coextensive with the jurisdiction of the Board of Claims   In other words, any entity entitled to claim immunity from suit must be so closely controlled by and funded by the Commonwealth that a party found to have been injured by its negligence may proceed within the jurisdiction of the Board of Claims Act.[4] *Withers v. Univ. of Ky.*, 939 S.W.2d 340, 346 (Ky.

---

[3] As the following analysis will illuminate, whether an entity is "integral" to local government has little to do with it performing a public function. By definition, most governmental agencies perform some public function. Certainly, Camp Taylor performs a vital public function. The "integral" nature of its activity concerns its closeness to the structure and control of a sovereign entity, rather than the nature of its function. *Yanero* and *Berns* can be read together to define three classes of entities with varying sources and degrees of immunity. The first class consists of entities like "municipal corporations" which, though created or authorized by the state are not "integral" and are therefore never entitled to immunity no matter how governmental the activity they are undertaking. The second class includes "state agencies" which are "integral parts" of state or county government and are entitled to immunity so long as they continue to engage in a governmental as opposed to a proprietary function. Finally, *Yanero* uses the term "sovereign immunity" to describe only absolute immunity enjoyed by the Commonwealth and its counties.

[4] Counties, which are entitled to absolute sovereign immunity by virtue of their status as distinct political subdivisions of the Commonwealth, are beyond the jurisdiction of the Board of Claims. By contrast, those entities properly labeled "state agencies" fall expressly within the Board of Claim's jurisdiction. *See Comm'r v. Harris*, 59

1997).

B.

One way of understanding whether Camp Taylor has any sort of immunity is to review how Kentucky courts have treated similar entities.

In 1991, the *Berns* court classified the Kentucky Center for the Arts as a "municipal corporation," defined as a "local entity created by act of the General Assembly and not [an] agency performing the services of central state government." *Id.* at 331. A municipal corporation is not limited to a city, but is merely a "local government entity created by the state to carry out 'designated' functions.'" *Id.* at 332.[5] The *Berns* court determined that the Kentucky Center for the Arts Corporation was not under the "direction and control" of the state since its appointed directors act autonomously and can only be removed for cause. *Id.* at 331.

In 1997, the Kentucky Supreme Court applied the two-pronged *Berns* test to the University of Kentucky and its Medical Center, finding that it was entitled to governmental immunity. *Withers*, 939 S.W.2d 340. The *Withers* court determined that the state statutes authorizing and funding the University of Kentucky established "unmistakably that the University of Kentucky operates under the direction and control of central state government and that it is funded from the State Treasury." *Id.* at 343. That the Medical Center's hospital function served the same function as a private hospital did not change the analysis since the operation of a teaching hospital was essential to the educational mission of the university's medical school. *Id.*

---

S.W.3d 896, 901 (Ky. 2001).

[5]Examples of entities held to be municipal corporations include metropolitan sewer districts and county boards of health. *See*, *e.g.*, *Calvert Investments v. Louisville & Jefferson County Metro. Sewer Dist.*, 805 S.W.2d 133 (Ky. 1991).

The governor maintained further control by appointing University trustees who governed the institution.

More recently, the Court applied the *Berns* test in rejecting Floyd County Development Authority's claim of immunity. *Kea-Ham Contracting, Inc. v. Floyd County Dev. Auth.*, 37 S.W.3d 703 (Ky. 2000). Floyd County created the Development Authority, a non-profit entity, pursuant to KRS 154.50-316 to "promote economic progress in the county by acquiring and developing land for industrial and commercial uses." *Id.* at 705. The *Kea-Ham* court determined that notwithstanding the Board's appointment by the county-judge executive, neither the central state government nor Floyd County sufficiently controlled the Development Authority because the Board had "independent responsibility for making decisions for the Authority." *Id.* at 706. Moreover, despite the fact that the Authority received some funds from state agencies, such funding was insufficient to satisfy the second *Berns* prong because it was "not limited to appropriations from central government." *Id*. Thus, alternative sources of funding and independent decision-making defeated the Development Authority's claim that it was integral to state or county government.[6]

---

[6] Most recently, the Court affirmed the grant of governmental immunity to Western Kentucky University and extended governmental immunity to the Student Life Foundation (SLF) which the University created, directed, and controlled. SLF's immunity was based on its status as an agent and alter ego of the University which was entitled to governmental immunity. *Autry v. W. Ky. Univ.,* 219 S.W.3d 713 (Ky. 2007).

C.

An analysis of these cases is instructive as to whether Camp Taylor's fire protection function is "integral to state [or county] government" and whether it is among those "departments, boards or agencies that are such integral parts of state [or county] government as to come within regular patterns of administrative organization and structure." *See Berns*.[7] Camp Taylor seems more integral to Metro Louisville than the Arts Center because Camp Taylor is under Metro's nominal control. It seems less integral than the University of Kentucky Medical Center which is controlled by the University trustees appointed by the governor and which is primarily funded from state revenues. It is certainly more integral than the Floyd County Development Authority. Finally, Camp Taylor is similar to a local school district in many respects, except that the legislature has authorized school districts to fulfill a constitutionally mandated duty. Thus, by comparison, Camp Taylor has more attributes than those upon which the Supreme Court has declined to bestow immunity, but less attributes than one that received immunity.

Camp Taylor bears the burden of proving the nature of the relationship between Camp Taylor and Louisville Metro. Though Camp Taylor has referred the Court to the statutes governing its organization as a taxing district under Ky. Rev. Stat. Ann. § 65.182 and Ky. Rev. Stat. Ann. § 75, the Court has no information suggesting how Louisville Metro directs and

---

[7] It is difficult to conceive of a more public and less "proprietary" function than volunteer fire protection. That fact, however, is irrelevant to the current discussion. This Court is determining the threshold question of whether a volunteer fire department is a state agency that is *ever* entitled to invoke governmental immunity. Though several post-*Berns* and *Yanero* decisions discuss the governmental/proprietary distinction, that analysis is to determine if a decidedly integral state agency has nonetheless undertaken such a proprietary or non-governmental activity that it is stripped of its immunity while so engaged. *See, e.g., Schwindel v. Meade Co.*, 113 S.W.3d 159 (Ky. 2003).

10

controls Camp Taylor (beyond Board of Trustee appointments) or funds it, either of which might distinguish it from those state-created agencies which Kentucky courts have found to be beyond the scope of the state or county's sovereign immunity. *See*, *e.g.*, *Kea-Ham*, 37 S.W.3d 703 (Ky. 2001). Camp Taylor further directs the Court to Ky. Rev. Stat. Ann. § 75.250(2) which requires the county attorney to "advise and represent the board in all matters and on the occasions *chosen by the board and whenever the board so requests*" (emphasis added). The same statute authorizes the Board "in its discretion, [to] employ or retain a regularly licensed attorney. . ." Ky. Rev. Stat. Ann. § 75.250(1). That the Board may choose between a private attorney or the county attorney suggests a degree of independence and autonomy from county government.

Finally, though Camp Taylor does not rely on the explicit extension of immunity to volunteer fire departments contained in Ky. Rev. Stat. Ann. § 75.070,[8] the Court notes that under Kentucky law, the General Assembly is without power to grant immunity to entities beyond constitutionally protected sovereign immunity, which is limited to "integral parts"of government. *See Berns*, 801 S.W.2d 327 at 331. Thus, if Camp Taylor enjoys immunity, it is by virtue of its status as an "integral part" of state or county government, which is independent of any statutory grant of immunity.

The Court cannot conclude that Camp Taylor falls within the class of entities entitled to sovereign or governmental immunity under Kentucky law without some factual basis for doing so. The Court finds no such basis even though both Third-Party Plaintiffs and Third-Party Defendants are uniquely positioned to describe the relationship between Camp Taylor and the

---

[8]". . . volunteer fire department . . . shall be considered an agent of the Commonwealth of Kentucky, and acting solely and alone in a governmental capacity . . . shall not be liable in damages . . ."

11

state or Louisville Metro.

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Camp Taylor's motion to dismiss is DENIED at this time. Camp Taylor may file a later motion based upon additional evidence.

cc:   Counsel of Record